## APPEAL OF SENTINEL PUBLISHING CO., SUCCESSOR TO CURTIS B. JOHNSON PUBLISHING CO.

Docket No. 5712.    Promulgated September 27, 1927.

Where in 1911 one corporation issued its capital stock for the entire capital stock of another corporation, such stock acquired is tangible property under section 325 of the Revenue Act of 1918,

and the subsequent liquidation of such acquired capital stock and the merger of such corporation into the taxpayer has no effect in computing invested capital nor does it change tangible assets into intangible assets for the purpose of such computation.

*H. H. Shelton, Esq.*, for the petitioner.

*Alva C. Baird, Esq.*, and *A. H. Willy, Esq.*, for the Commissioner.

The Commissioner determined a deficiency in income and profits tax of $6,454.71 for the calendar year 1918 as a result of his denial in part of the claim for the abatement of a jeopardy assessment of an additional tax of $12,755.67, assessed in February, 1924. Petitioner claims that the Commissioner erred in excluding from invested capital the amount of $155,921.18 upon the ground that that amount represented intangibles acquired by petitioner for capital stock. Petitioner claims that tangible and intangible property of the value of $338,-273.55 was acquired by its predecessor, the Curtis B. Johnson Publishing Co., from the Knoxville Sentinel Co., in exchange for tangible property, to wit, the entire capital stock of the Knoxville Sentinel Co. and that, therefore, the limitation provided in section 326 (a) (4) of the Revenue Act of 1918, with reference to intangibles acquired for stock does not apply. Petitioner also claims that the collection of the additional tax assessment for the calendar year 1918 is barred by the statute of limitation of five years.

The invested capital issue stated above was before the Board in the appeal of this petitioner, Docket No. 2756, reported in 2 B. T. A. 1211, involving the calendar year 1919, wherein the Board approved the determination of the Commissioner that the provisions of section 326 (a) (4) were applicable for the reason that sufficient information had not been presented to the Board showing the manner in which the petitioner acquired the tangible and intangible assets of the Knoxville Sentinel Co., that is, the petitioner failed to establish to the satisfaction of the Board that the intangible assets of the Knoxville Sentinel Co. had not been acquired for its stock.

FINDINGS OF FACT.

Petitioner is a Tennessee corporation with principal office at Knoxville, where it is engaged in publishing a daily newspaper. It is successor to the Curtis B. Johnson Publishing Co., which was incorporated on December 11, 1912, with a capital stock of a par value of $100,000 and shortly thereafter acquired all of the tangible and intangible assets of the business of the Knoxville Sentinel Co., which had been engaged for many years in publishing the Knoxville Sentinel, a daily newspaper.

The assets of the Knoxville Sentinel consisted of a large amount of tangible property in the way of machinery and equipment necessary in the publication of a daily newspaper of wide circulation. Its assets also included franchises, good will, subscription contracts, advertising contracts, accounts and bills receivable, etc. The capital stock of the Knoxville Sentinel, consisting of $100,000 par value, was closely held, two thirds, or 666⅔ shares, being owned by George F. Milton of Chattanooga, who was engaged in publishing a daily newspaper at that place known as the Chattanooga News, and the other one-third, or 333⅓ shares, being owned by Curtis B. Johnson of Knoxville, who was engaged in the publication of a daily newspaper known as the Knoxville Sentinel. These two individuals also owned all of the stock of the Chattanooga News Co. in the same proportion as above stated. The operations of the Knoxville Sentinel had been and were in 1912 profitable and the stock of that company had a cash value far in excess of par.

Some time prior to November, 1912, George F. Milton proposed to sell to Curtis B. Johnson the stock owned by him in the Knoxville Sentinel Co. upon the basis of a value for all of the capital stock of that company of $338,273.55, or $338.27 a share. Curtis B. Johnson decided to acquire Milton's stock at the price mentioned but he did not personally have sufficient cash available to close the transaction, whereupon he proposed to eight of his closest friends, Frank M. Haynes, T. C. Chapman, H. M. Johnston, Wiley M. Morgan, J. D. Clinton, H. L. Baker, T. J. Clark, and A. J. Russell, who were familiar with the assets and business of the Knoxville Sentinel, that they join with him in purchasing Milton's stock and become the owners of an interest in said stock in proportion to the amount of money advanced by them for the purpose. To this proposition they agreed and came forward with the amount of cash needed by Curtis B. Johnson to make the purchase. It was agreed and understood between Curtis B. Johnson and his associates that the purchase from Milton of his stock in the Knoxville Sentinel should be carried out in the name of Curtis B. Johnson alone and that, after the transaction had been completed and all of the stock of the Knoxville Sentinel acquired, a new corporation known as the Curtis B. Johnson Publishing Co. would be organized and its entire capital stock of $100,000 par value issued to the parties in interest in exchange for the entire capital stock owned by them in the Knoxville Sentinel, it being a part of the plan that the Curtis B. Johnson Publishing Co. should later take over the assets and the business of the Knoxville Sentinel. Accordingly, on November 26, 1912, Curtis B. Johnson on behalf of himself and his associates entered into a contract with Milton for

the purchase of the stock of the latter. So much of the contract as is pertinent to the issue here involved follows:

THAT FOR AND IN CONSIDERATION of the payments hereinafter provided, the transfer of stocks hereinafter provided and the mutual agreements and undertakings hereinafter provided, the party of the first part has agreed and does hereby sell and deliver unto the party of the second part all of the shares of stock owned by the party of the first part in the Knoxville Sentinel Company, a corporation organized and existing under the laws of Tennessee, with its principal office at Knoxville, Tennessee, basing the value of said Knoxville Sentinel Company at $250,000.00, which includes its franchises, good will, subscriptions, advertising contracts, machinery, accounts receivable, and all other assets of every kind and character whatsoever, excepting, however, the obligations now due to the said Knoxville Sentinel Company by the Chattanooga News Company, a corporation under the laws of Tennessee, at the price of $166,666.67, for the two-thirds interest of the party of the first part in the shares of stock of said Knoxville Sentinel Company, which sum of $166,666.67 party of the second part hereby agrees to pay to the party of the first part as follows:

FIRST: Cash on completion of this contract and on delivery of said certificates of stock, receipt of which is hereby acknowledged_____ $40,000.00

SECOND: One note for $22,166.67 of even date herewith, due thirty days after date with 6% interest after date signed by the party of the second part as principal and by H. M. Johnston, S. M. Johnston, David C. Chapman, and Frank M. Haynes, as sureties__ 22,166.67

THIRD: One note for $22,500.00 of even date herewith due sixty days after date with 6% interest from date signed by party of of the second part as principal, and by H. M. Johnston, S. M. Johnston, David C. Chapman, and Frank M. Haynes, as sureties__ 22,500.00

FOURTH: All of the shares of stock belonging to party of the second part in the Chattanooga News Company of the par value of $30,666.67 to be transferred to the party of the first part at the value of_____ 32,000.00

FIFTH: $50,000.00 of first mortgage bonds secured by deed of trust on the franchises, good will, and all tangible property of the Knoxville Sentinel Company which bonds shall bear interest at 6% per annum, payable semi-annually, and shall be payable as to principal as follows: $5,000 due in five years, and $5,000 due every year thereafter until the full amount is paid, with the provision that said bonds may be retired in whole or in part on any interest payment date before maturity, said deed of trust to contain substantially the same provision as that of the Chattanooga News Company, said $50,000.00 of bonds to be the only first mortgage bonds on said property_____ 50,000.00

Making the total of_____ 166,666.67

As part of the consideration hereof, it is further agreed as follows:

1st: That party of the second part shall cause the Knoxville Sentinel Company to transfer to party of the first part, all debts due the Knoxville Sentinel Company by the Chattanooga News Company including checks, overdrafts, open accounts, and all other claims and accounts of every kind whatsoever, and that the said Knoxville Sentinel Company shall release party of the first part from all obligations as endorser, surety, or guarantor of said Knoxville Sentinel

Company, and shall hold party of the first part harmless on account of any and all liabilities growing out of his connection with the management of said Knoxville Sentinel Company while he was connected therewith.

2nd: Party of the second part shall cause said Knoxville Sentinel Company to pay all notes on which party of the first part is now liable as endorser or surety for it, or shall so arrange said notes at their maturity as to release party of the first part from any liability whatever thereon in such manner as shall be satisfactory to party of the first part.

3rd: The party of the second part shall cause the personal accounts of the party of the first part, and Mrs. Geo. F. Milton, and Mrs. Sarah F. Milton, with the Knoxville Sentinel Company, to be balanced on the books of the company.

4th: Party of the first part shall cause the account of party of the second part with the Chattanooga News Company up to and including November 30th, 1912, to be paid to party of the second part and shall cause said account to thereupon be balanced in full.

5th: Party of the second part agrees that a certain note executed by party of the first part for $2,250 November 20th, 1912, due ninety days after date now held by the Union Bank of Knoxville, Tennessee, endorsed by Knoxville Sentinel Company, and secured by notes of the party of the second part and stock of the Knoxville Sentinel Company, which $2,250 note is an obligation of the Knoxville Sentinel Company, shall be paid or so arranged as to release the collateral thereto attached and relieve party of the first part of liability thereon.

6th: The party of the first part shall cause the Knoxville Sentinel Company and party of the second part to be released from any and all liability of whatsoever character, whether as surety or endorser, of notes, accounts or other obligations, made or created by party of the first part or by the Chattanooga News Company, and that he will cause party of the second part to be released from all obligations of every kind, whether by bank endorsement or otherwise, which were incident to the conduct of the Chattanooga News Company and will hold party of the second part harmless on account of any and all liabilities growing out of his connection with the management of the Chattanooga News Company while he was connected therewith. * * *

This contract was carried out and Curtis B. Johnson and his associates paid Milton in cash or its equivalent $338.27 a share for the stock and thereupon became the owners of all of the capital stock of the Knoxville Sentinel. Subsequently, on December 11, 1912, the Curtis B. Johnson Publishing Co. was organized under the laws of the State of Tennessee and issued its entire capital stock, consisting of 1,000 shares of the par value of $100 each, to Curtis B. Johnson and his associates in exchange for the entire capital stock of the Knoxville Sentinel of a like number of shares and like par value. Said stock of the Curtis B. Johnson Publishing Co. was issued to these individuals in proportion to their then stock interest in the Knoxville Sentinel, as follows:

|  | Shares |
|---|---|
| Curtis B. Johnson | 637½ |
| Frank M. Haynes | 100 |
| T. C. Chapman | 100 |
| H. M. Johnston | 100 |

|  | Shares |
|---|---|
| Wiley L. Morgan_____ | 25 |
| J. D. Clinton_____ | 12½ |
| H. L. Baker_____ | 12½ |
| T. J. Clark_____ | 7½ |
| A. J. Russell_____ | 5 |
| Total_____ | 1, 000 |

The makers of the notes to Milton as part of the consideration for his stock were entirely solvent and said notes were the equivalent of cash.

Shortly thereafter the Curtis B. Johnson Publishing Co. acquired the business and assets of every description, tangible and intangible, of the Knoxville Sentinel Co. and caused that company to be dissolved and its stock surrendered. The Curtis B. Johnson Publishing Co. thereafter carried on the business theretofore conducted by the Knoxville Sentinel. Some cash and notes were paid in to the Curtis B. Johnson Publishing Co. at the time or shortly after its organization but such transactions are not in question here.

After the transaction with Milton had been closed Curtis B. Johnson and his associates, being closely associated, gave little or no consideration to the matter of the value of the stock of the Knoxville Sentinel exchanged for the stock of the Curtis B. Johnson Co. or to the value of the assets of the Knoxville Sentinel, the thought uppermost in their minds being to have the Curtis B. Johnson Publishing Co. issue its stock to the parties in interest in proportion to their stock interest in the Knoxville Sentinel Co. and to have the Curtis B. Johnson Publishing Co. take over the assets and business of the Knoxville Sentinel Co. and carry on the same business as had theretofore been carried on. Curtis B. Johnson and Wiley L. Morgan were in charge of the operations of the company. The actual cash value of the stock of the Knoxville Sentinel Co. at the time acquired by the Curtis B. Johnson Publishing Co. in exchange for its stock was $338,273.55. When the Curtis B. Johnson Publishing Co. took over the assets and business, and assumed the liabilities of the Knoxville Sentinel Co., no attempt was made to revalue such assets but the books of the Knoxville Sentinel Co. were continued as they had theretofore been kept by the Sentinel Company without change. The Curtis B. Johnson Publishing Co. subsequently issued $50,000 in bonds but this transaction is not material here.

In its return for the calendar year 1918, which was filed with the Collector of Internal Revenue for the District of Tennessee on June 13, 1919, under an extension granted by the Commissioner, petitioner showed a tax of $18,041.04, which was duly paid, and in such return petitioner claimed invested capital on account of the tangible and

intangible assets acquired from the Knoxville Sentinel Co. of $338,-273.55. Upon audit of the return the Commissioner held that the assets of the Knoxville Sentinel Co. had been acquired by petitioner in exchange for its capital stock and excluded from petitioner's invested capital the amount of $155,921.18. The amount claimed through the application of the 25 per cent limitation, as provided in section 326 (a) (4) of the Revenue Act of 1918, petitioner claims as error. Upon the basis of this determination the Commissioner in his computation mailed to the petitioner on January 24, 1924, upon the basis of which he made a jeopardy assessment, asserted a deficiency of $12,755.67. Due to the approaching expiration of the statute of limitation the Commissioner on January 24, 1924, advised the petitioner that " It is deemed expedient by this office that the above tax be assessed immediately without giving the usual thirty days notice as provided in section 250 (d) of the Revenue Act of 1921, and that a claim be filed by you to protect your interests in the matter. Therefore the Bureau will entertain a claim in abatement if filed within ten days after receipt of notice and demand from the Collector of Internal Revenue for your district, in accordance with the provisions of Article 1006 of Regulations 62." The additional tax of $12,755.67 was assessed in the latter part of January or early in February, 1924. On March 3, 1924, the Curtis B. Johnson Publishing Co. executed a claim for the abatement of the jeopardy assessment and filed said claim with the collector of internal revenue at Nashville, Tenn., on March 4, 1924. The collector demanded a bond for the tax assessed and accordingly, on May 11, 1925, petitioner executed a bond. On June 17, 1925, the Commissioner, upon consideration of petitioner's abatement claim, determined that petitioner's profits tax for 1918 should be computed under the provisions of section 328 of the Revenue Act of 1918. He made such computation and determined thereby that petitioner's correct tax liability for the year 1918 was $24,495.75 instead of $20,796.71 as assessed by him upon the original return and on the February, 1924, Special Jeopardy Assessment List, thereby allowing petitioner's abatement claim of $6,300.96, and determined the deficiency for the calendar year 1918 to be in the amount of $6,404.71. From this determination of June 17, 1925, the petitioner, within 60 days thereafter, instituted this proceeding for the redetermination of such deficiency. On November 10, 1926, the petitioner and the Commissioner executed the following document entitled " Income and Profits Tax Waiver " as follows:

In pursuance of the provisions of existing Internal Revenue Laws *Curtis B. Johnson Publishing Company,* a taxpayer of *740 Gay Street, Knoxville, Tennessee,* and the Commissioner of Internal Revenue hereby waive the time prescribed by law for making any assessment of the amount of income, excess-

11340°—28——24

profits, or war-profits taxes due under any return made by or on behalf of said taxpayer for the year *1918* under existing revenue acts, or under prior revenue acts.

This waiver of the time for making any assessment as aforesaid shall remain in effect until December 31, 1927, and shall then expire.

THE SENTINEL PUBLISHING Co., Successors to
THE CURTIS B. JOHNSON PUBLISHING Co.
By WILEY L. MORGAN, *V. P. & G. M.*
D. H. BLAIR, Commissioner.

No suit in court or distraint proceeding has been instituted by the Commissioner against this petitioner for the collection of any additional tax for the calendar year 1918.

OPINION.

LITTLETON : The first issue involved in this proceeding was before the Board in the *Appeal of Sentinel Publishing Co.*, Docket No. 2756, reported in 2 B. T. A. 1211. The evidence in that proceeding consisted of depositions of certain witnesses and the testimony contained therein did not disclose the manner in which the Curtis B. Johnson Publishing Co. acquired the assets and business of the Knoxville Sentinel Co. The testimony in that proceeding was to the effect that cash and the equivalent of cash was paid in to the Curtis B. Johnson Publishing Co. for its stock of the par value of $100,000. It was not brought out in such deposition just how the transaction between Curtis B. Johnson and his associates, and the Curtis B. Johnson Publishing Co., was handled and nothing was disclosed by the record as to how or in what manner the Curtis B. Johnson Publishing Co. acquired the assets of the Knoxville Sentinel Co. For that reason the Board approved the Commissioner's determination wherein he applied the limitation specified in the provisions of section 326 (a) (4) of the Revenue Act of 1918 in determining the amount to be included in invested capital on account of the tangibles and intangibles acquired for stock. We were compelled to do that because we were without sufficient information to enable us to hold that the intangible assets of the Knoxville Sentinel Co. were not acquired by the Curtis B. Johnson Publishing Co. for its stock. This deficiency in the evidence in the former proceeding relating to this issue has been supplied in this proceeding. *Canyon Lumber Co.*, 4 B. T. A. 940.

There appears to be no dispute as to the cash value of the stock of the Knoxville Sentinel Co. paid in to the Curtis B. Johnson Publishing Co. for its stock or that the tangible and intangible assets of the Knoxville Sentinel Co. were not also worth at least $338,-273.55. The evidence shows that the stock of the Knoxville Sentinel Co. had a cash value of $338 a share at the time it was acquired by the Curtis B. Johnson Publishing Co. in exchange for its stock and

at the time such stock was surrendered and canceled and the Knoxville Sentinel Co. dissolved and its assets taken over by the Curtis B. Johnson Publishing Co. The Curtis B. Johnson Publishing Co. issued its stock for tangible property, to wit, stock of the Knoxville Sentinel Co., and later dissolved that company and took over the tangible and intangible assets of the company, which form the basis of the invested capital claimed. The cost of the assets of the Knoxville Sentinel Co. to the Curtis B. Johnson Publishing Co. was $338,273.55 and these assets, although to a large extent intangibles, were not acquired by the Curtis B. Johnson Publishing Co. in exchange for its capital stock and the limitation on intangibles acquired for stock, as provided in section 326 (a) (4), therefore, did not apply in this case. *Regal Shoe Co.*, 1 B. T. A. 896, and *Merchants National Bank* v. *Commissioner*, 6 B. T. A. 1167. Petitioner is, therefore, entitled to include in invested capital the full amount of $338,273.55 on account of assets acquired from the Knoxville Sentinel Co. and the Commissioner erred in excluding any portion of that amount on the ground that it represented intangibles acquired by petitioner for its stock .

The petitioner, although it did not expressly waive the issue, stated in the petition relating to the statute of limitation, did not urge it at the hearing or in its brief, and we therefore have no information as to the theory upon which this claim is based. Cf. *Joy Floral Co.* v. *Commissioner*, 7 B. T. A. 800.

In the original petition filed petitioner claimed that it was entitled to a credit of $4,167.24 against its tax for 1918 and that it is therefore entitled to a refund of tax for that year, but .nothing was said concerning this issue at the hearing or in the brief filed and no testimony was offered in regard thereto from which the Board could make any determination as to whether the petitioner is entitled to such credit even if it should be held that the Board has jurisdiction so to do. In view of the failure of the petitioner to submit any evidence or to make any claim at the hearing in respect to this issue, we conclude that it decided to waive this claim before the Board.

Reviewed by the Board.

> *Judgment will be entered on 15 days'*
> *notice, under Rule 50.*